IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JASON COHEE,<br>    Plaintiff,<br><br>v.<br><br>CATERPILLAR INC.,<br>    Defendant. | Case No. 1:24-cv-01262-JEH-RLH |

**Order**

Now before the Court is Defendant Caterpillar Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) and Memorandum in Support (D. 18).[1] For the reasons set forth, *infra*, the Defendant's Motion is GRANTED.

**I**

This case was removed to federal court on July 25, 2024. In his first amended complaint (D. 1-2), Plaintiff Jason Cohee claimed retaliatory discharge, harassment, negligent infliction of emotional distress, and promissory estoppel against Defendant Caterpillar Inc. (Caterpillar) along with other legal theories. *See* 2/26/25 Order (D. 14 at ECF pp. 4-5) (stating general agreement with Caterpillar that its categorization of the Plaintiff's allegations into such claims was an accurate reflection of the claims he sincerely attempted to bring). The Plaintiff's claims were dismissed without prejudice for failure to state a claim on the Defendant's first motion to dismiss.[2]

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."
[2] The Court dismissed *with prejudice* any attempted Family and Medical Leave Act or equal protection claims. *See* 2/26/25 Order (D. 14 at ECF p. 17).

1

On March 12, 2025, the Plaintiff filed his Second Amended Complaint for Wrongful Employment Termination (D. 15). On April 16, 2025, the Defendant filed the instant Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss. The Plaintiff filed no response in opposition, even after being warned that the Court would presume there is no opposition to the Motion and would rule without further notice to the parties if a response was not timely filed by the extended response deadline the Court provided *sua sponte*. Civil LR 7.1(B)(2).

## II

In his Second Amended Complaint, the Plaintiff alleges[3] he was employed by Defendant Caterpillar at its Mapleton, Illinois facility between April 2023 and his termination in October 2023. Before being moved to third shift, the Plaintiff was warned to avoid his coworker, Tyler, due to Tyler's problematic behavior. Upon the Plaintiff being moved to third shift, Tyler "became demanding, harassing, intimidating, and bullied [sic] [the Plaintiff] to do tasks against his work ethic." Pl.'s 2d Am. Compl. (D. 15 at ECF p. 3). Tyler, among other things, "needlessly" told the Plaintiff to move out of the way, yelled at him for no reason, told him to lift heavy pieces of parts with hoists in a dangerous way, was overly critical of the Plaintiff, and threw pieces of iron in the Plaintiff's direction, barely missing him. *Id*. at ECF pp. 3-4. As a result of Tyler's behavior, the Plaintiff came into work physically sick from the "psychological [d]isruption and emotional distress" Tyler created. *Id*. at ECF p. 4.

After the Plaintiff spoke with his "replacement immediate supervisor" the two went to the nurse's station where the Plaintiff discussed the situation with the third shift superintendent, Stephen Bloomer. *Id*. Bloomer gave Plaintiff

---

[3] When ruling on a motion to dismiss, the court must take all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Indep. Truck Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).

permission to punch out and be excused for the night. When the Plaintiff's "physical symptoms of the acute stress" caused by Tyler continued (a Friday night), the Plaintiff asked and received permission from his immediate supervisor, "Doyle [Hutton]", to go home. *Id*. at ECF p. 5. The Plaintiff also suggested, a second time, that he be moved elsewhere in order to be removed from the environment with Tyler. When his physical symptoms returned the following Monday, the Plaintiff texted Doyle informing him Plaintiff would not be coming in and would have a "Medical return to work document" before he returned to work. *Id*. That morning, the Plaintiff went to OSF Prompt Care, was examined, and received a "Return to Work document" for the three days of work he had missed plus the following two nights. *Id*. The Plaintiff texted Doyle the Return to Work document, stating he had a medical excuse according to company policy which gave him the additional two nights off if his situation had not been accommodated and changed. Per the Plaintiff, "This company policy of a doctor's note after the 3rd day of calling off sick to regain employment was explained to Mr. Cohee in orientation by Mr. Jayme Strube." *Id*. at ECF p. 6. The Plaintiff's first shift supervisor, Kemal Jordan, also said that if three days in a row of work were missed, a doctor's note was needed to return.

On Monday evening, the Plaintiff received a text from Bloomer, the superintendent, stating he wanted to meet with the Plaintiff about his employment status, to which Plaintiff responded with his Return to Work document and stated he had the night off per medical advice if his hostile and intolerable work conditions had not changed. Upon the Plaintiff returning to the Mapleton facility, Bloomer met him at the front entrance and explained to the Plaintiff that he had abandoned his employment and was therefore terminated. The Plaintiff "insisted he did not abandon his employment when he provided the doctor's note for his absences." *Id*. at ECF p. 7.

### III

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief can be granted". A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id*. at 555. The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

As an initial matter, a court may not grant a Rule 12(b)(6) motion to dismiss merely because the plaintiff failed to respond. *Marcure v. Lynn*, 992 F.3d 625, 631-33 (7th Cir. 2021). The Court thus proceeds to consider the sufficiency of the Plaintiff's Second Amended Complaint. *See id.* at 633 n.5 ("Courts remain free to rule on Rule 12(b)(6) motions even absent a response by looking to the complaint itself to determine the sufficiency of the pleadings."). Furthermore, as the Court previously observed in its February 26th Order (D. 14) as to the Plaintiff's first amended complaint, the Plaintiff's Second Amended Complaint fails to comply with Federal Rule 8(a)(2) which states a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief". In several instances he conflates allegations with arguments and with case law. Nevertheless, "[a] document filed *pro se* is to be liberally construed," and a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers". *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Applying that liberal construction, the Court agrees with the Defendants that the Plaintiff includes three counts in his Second Amended Complaint: retaliatory discharge in violation of the Illinois Whistleblower Act; promissory estoppel; and harassment.

### A

As for his first count, the Plaintiff alleges that Defendant Caterpillar terminated him in retaliation for reporting Tyler's improper conduct, and his termination violated "a clear mandate of public policy of the Illinois Whistleblowers [sic] Act for reporting violation of OSHA [Occupational Safety and Health Administration] workplace standards." Pl.'s 2d Am. Compl. (D. 15 at ECF p. 8). Though the Plaintiff did not cite a particular provision of the Illinois Whistleblower Act (IWA), the only subsection that could plausibly apply to the Plaintiff's alleged facts, as the Defendant argues, is Section 15(c) of the Act.

### 1

That subsection provides:

> An employer may not take retaliatory action against an employee for disclosing or threatening to disclose to any supervisor, principal officer, board member, or supervisor in an organization that has a contractual relationship with the employer who makes the employer aware of the disclosure, information related to an activity, policy, or practice of the employer if the employee has a good faith belief that the activity, policy, or practice (i) violates a State or federal law, rule, or regulation or (ii) poses a substantial and specific danger to employees, public health, or safety.

740 ILL. COMP. STAT. 174/15(c) (2025); *compare* 740 ILL. COMP. STAT. 174/15(b) (2025) ("An employer may not take retaliatory action against an employee for disclosing or threatening to disclose information to a government or law enforcement agency information related to an activity, policy, or practice of the employer . . . ."); *see Brame v. City of N. Chi.*, 955 N.E.2d 1269, 1272 (Ill. App. Ct.

2011) (distinguishing cases which determined Section 15(b) did *not* apply because "none of [those] cases involved an employee who disclosed information to a government or law-enforcement agency, as the Act requires.").

The Plaintiff fails to state a claim pursuant to Section 15(c) of the IWA because that section took effect on January 1, 2025, *after* the Plaintiff filed his lawsuit in July 2024, and that section is not retroactive. The Illinois Legislature stated, "The changes [including the addition of subsection (c)] made by this amendatory Act of the 103rd General Assembly apply to *claims arising or complaints filed on or after* January 1, 2025." 2024 Ill. Legis. Serv. P.A. 103-867 (H.B. 5561) (West) (emphasis added); *see also Moore ex rel. S.M. v. I-55 Truckstop Rest., Inc.*, No. 24 CV 10385, 2025 WL 588636, at *2 n.2 (N.D. Ill. Feb. 24, 2025) ("The Illinois Whistleblower Act, including the language quoted here, was rewritten effective January 1, 2025 . . . The new language applies to 'claims arising or complaints filed on or after January 1, 2025,' and therefore is not relevant to this case [filed in 2024]."). Here, the Plaintiff alleges the Defendant violated the IWA when he was terminated after reporting a fellow employee's harassment, bullying, and intimidation to supervisors *within* Caterpillar. The Plaintiff does not allege he disclosed or threatened to disclose information regarding alleged OSHA violations to a government or law enforcement agency, allegations that would pertain to a Section 15(b) claim. As a result, his IWA claim fails. *See Hill v. Target Corp.*, No. 24 C 341, 2025 WL 919614, at *12 n.17 (N.D. Ill. Mar. 26, 2025) (noting the IWA was amended on January 1, 2025 and so the court applied the version of the statute in effect when the plaintiff was employed by the defendant).

### 2

The Plaintiff's allegations as to OSHA workplace standards, even if construed to claim the referenced OSHA Manual is the underlying mandate of public policy his discharge violated, do not salvage his retaliatory discharge claim.

"To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy." *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 135 N.E.3d 891, 896 (Ill. 2019). "[T]he public policy alleged by a plaintiff must be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law." *Id.*

Here, the Plaintiff cites only to Chapter 10 of the OSHA Field Safety and Health Management Manual (Manual) which by its express terms "applies to all OSHA employees". OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, https://www.osha.gov/shms/chapter-10. As the Plaintiff was not an OSHA employee but rather a Caterpillar employee, the Manual does not constitute the requisite public policy. The Plaintiff's reliance on OSHA "regulations" is otherwise misplaced because, given his allegations, the regulations are not the source for the public policy the Plaintiff suggests – a workplace free of employees who engage in bullying to the point of making another employee physically ill. The Occupational Safety and Health Act's general duty clause provides that each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees". 29 U.S.C. § 654(a)(2). Here, the Plaintiff does not allege he was exposed to hazards that were likely to cause him death or serious physical harm. Rather, he had a physical response to the treatment he received from a fellow employee.

The Plaintiff's citation to an Illinois criminal statute fares no better in sufficiently alleging the public policy element of a retaliatory discharge claim. As the Defendant argues, the cited criminal statute, Section 26.5-2 of the Harassing and Obscene Communications Law applies only to individuals who use a

telephone or other electronic means to send obscene or harassing messages. *See, e.g.*, 720 ILL. COMP. STAT. 5/26.5-2 (Harassment by telephone); *and* 720 ILL. COMP. STAT. 5/26.5-3 (Harassment through electronic communications). Here, the Plaintiff does not allege his coworker Tyler communicated with him by email or telephone, nor does he allege he reported to the Defendant that Tyler had done so. Ultimately, the Plaintiff again fails to allege a violation of any clear mandate of public policy, and so the Plaintiff has again failed to state a claim for retaliatory discharge.

### B

In support of his promissory estoppel claim, the Plaintiff includes the allegations he made in his first amended complaint (as set forth in Section II, *supra*) and adds:

> Defendant did not honor Plaintiff, Mr. Cohee's, doctor's note as promised resulting in his termination and discharge for work abandonment to his detriment because he relied on the production of the doctor's note promse [sic] to maintain his employment when using four days sick leave.

Pl.'s 2d Am. Compl. (D. 15 at ECF p. 2). The Plaintiff adds/reiterates in his Second Amended Complaint that at his orientation, Caterpillar management and instructor Jordan and Strube, respectively, told him "it was needed and necessary to have a medical document from a professional that stated the medical reasons why an employee had missed three days straight in row [sic]." *Id.* at ECF p. 17. He also alleges the medical document was needed to return to work and prove a person was actually sick, he went to OSF Prompt Care and obtained the document, he texted the document to Doyle Hutton and Bloomer after missing the three days of work, and his employment was terminated as "work abandonment." *Id.* at ECF pp. 17-18. The Defendant argues the Plaintiff's claim fails to allege a "promise" of which its plain terms Defendant allegedly violated.

8

To state a claim for promissory estoppel, a plaintiff must allege and prove: 1) the defendant made an unambiguous promise to the plaintiff; 2) the plaintiff relied on such promise; 3) the plaintiff's reliance was expected and foreseeable by the defendant; and 4) the plaintiff relied on the promise to his detriment. *Matthews v. Chi. Transit Auth.*, 51 N.E.3d 753, 780 (Ill. 2016). "A promise for purposes of promissory estoppel typically involves 'a declaration that one will do or refrain from doing something specified.'" *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 680 (N.D. Ill. 2005) (quoting *Derby Meadows Util. Co., Inc. v. Inter-Continental Real Estate*, 559 N.E.2d 986, 995 (Ill. App. Ct. 1990)); *see also Reitman v. Evanston/Skokie Cmty. Consol. School Dist. 65*, 764 F. Supp. 3d 717, 730 (N.D. Ill. 2025) (quoting *Matthews*, 51 N.E.3d at 780) ("The doctrine of promissory estoppel 'is recognized as creating a contract implied in fact, which imposes a contractual duty based on a promissory expression by the promisor that shows an intention to be bound.'").

Here, the Plaintiff's Second Amended Complaint only goes so far as to allege that he was told he needed a doctor's note to return to work after missing three days, he obtained the note, he provided the note to his supervisors, and he was nevertheless terminated. He alleges a minimum requirement of his job, but not a promise by Caterpillar that if satisfied, he was guaranteed continued employment. As the Defendant argues, the Plaintiff alleges that Caterpillar told him a doctor's note is *necessary* to return to work, but he does not allege that Caterpillar promised him a medical note would be *sufficient* to excuse any absences after missing three days of work. Def.'s Mot. to Dismiss (D. 18 at ECF p. 14).

The Plaintiff's allegations and all reasonable inferences therefrom simply do not allege the Defendant made him a "promise." The following analogy is illustrative. An employee is told by his employer that he must start work promptly at 9:00 a.m. every day. The employee does so, yet he fails to complete assignments

9

by their deadlines, he repeatedly completes assignments that contain numerous errors, and he leaves work early without permission. The employee is fired for failing to timely complete assignments, committing errors in those assignments, and leaving work early without permission in spite of the fact he arrived every day at work at 9:00 a.m. The employer did not state to the employee, "if you start work promptly at 9:00 a.m. every day, you will not be fired." Had the employer said that it would have made a promise of continued employment and the employee could state a claim for promissory estoppel. Here, the Plaintiff does not allege the Defendant said to him that if he returned from a work absence with a doctor's note, the Plaintiff was guaranteed continued employment. The Plaintiff merely alleges a minimum requirement of his job that Caterpillar imposed on him, not a promise by Caterpillar of continued employment/no termination. After all, "In Illinois, a noncontracted employee is one who serves at the employer's will, and the employer may discharge such an employee for any reason or no reason." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009). Without more, the Plaintiff has failed to allege a necessary element of his promissory estoppel claim – an unambiguous promise to him. The Plaintiff has again failed to state a claim for promissory estoppel.

In its February 26th Order, the Court rejected the Defendant's argument[4] related to the existence of a Collective Bargaining Agreement (CBA) which stated, as the Plaintiff alleged, "Leaves of absence shall be granted automatically to employees who, because of physical or mental disability, are unable to work and

---

[4] In the instant Motion to Dismiss, the Defendant points out the Plaintiff does not clearly allege the cited CBA applied to him, "leaving open potential additional bases for dismissing his complaint." Def.'s Mot. to Dismiss (D. 18 at ECF p. 6). In a footnote therein, the Defendant argues the "lack of specificity in the Plaintiff's allegations leaves open the question of whether the CBA's existence, as a contract, categorically defeats his promissory estoppel claim or renders his promissory estoppel claim preempted by the Labor Management Relations Act due to the need to interpret the CBA's provisions." *Id.* at ECF p. 6 n.2.

10

who provide the Company with proper notice and evidence of such disability." Pl.'s 1st Am. Compl. (D. 1-2 at ECF p. 13). The Plaintiff included that he "followed this instruction and procedure as outlined." *Id*. The Court reasoned:

> . . . Plaintiff alleges that he was informed that he could provide a medical note for his absences (regardless of what the CBA provided), and that he was terminated for his reliance on this instruction. At this stage of the proceedings, the Court cannot say that Defendant's sweeping argument related to the existence of the CBA defeats the promissory estoppel claim.

2/26/25 Order (D. 14 at ECF p. 15); *see Healy v. Metro. Pier and Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015) (explaining that Section 301 [of the Labor-Management Relations Act] preempts not only claims "founded directly' on the [CBA], but also state law claims that indirectly implicate a [CBA].") (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)). That reasoning applies equally to the Plaintiff's Second Amended Complaint where he merely cites Article, Section 14.1 of the CBA and re-alleges without elaboration he followed that instruction but alleges *with* elaboration as to the "who, what, when" of his promissory estoppel claim. *See Chavez v. Don Stoltzner Mason Contractor, Inc.*, No. 10 C 264, 2010 WL 1417029, at *2 (N.D. Ill. Apr. 5, 2010) ("[S]tate-created labor rights may exist independent of a governing CBA, and a plaintiff may choose to enforce solely those independent state-created rights and forego enforcement of CBA-created rights."). The Court similarly declines to find, as it did before, that the Plaintiff's promissory estoppel claim is preempted at this time.[5] *See Wilcher v.*

---

[5] In its February 26th Order, the Court reasoned:

> In his Amended Complaint, Plaintiff informs the Court that there are several relevant provisions in the CBA related to discharge and the use of leave . . . This inclusion may allow the Court to determine that the question of whether Plaintiff was properly terminated for his use of leave will require interpretation of these provisions; although, it does not squarely place the claim above tangential involvement with the CBA.

11

*Kroger Co.*, No. IP 99-1599-C-T/K, 2002 WL 244573, at *4 (S.D. Ind. Feb. 6, 2002) ("[C]laims that are independent of the [CBA] or which tangentially involve a provision of a [CBA] are not preempted.").

C

As for the Plaintiff's "COMMENT on HARASSMENT Case law authority", to state a hostile work environment claim, a plaintiff must allege: 1) he was subject to unwelcome harassment; 2) the harassment was based on a protected characteristic; 3) the harassment was so severe or pervasive as to alter the conditions of employment; and 4) there is a basis for employer liability. *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015); Pl.'s 2d Am. Compl. (D. 15 at ECF p. 16) (emphasis in original). To the extent the Plaintiff again alleges a claim for harassment, the claim fails for the same reasons the Court explained in its February 26th Order. There, the Court explained the Plaintiff did not plead facts that allowed for any reasonable inference that the adverse action he suffered was connected to any protected characteristic, and he did not even attempt to point to a protected characteristic.

In his Second Amended Complaint, the Plaintiff merely states his "allegations are for workplace harassment". Pl.'s 2d Am. Compl. (D. 15 at ECF p. 9). Also, without including any exhibits to his Second Amended Complaint, the Plaintiff alleges he exhausted his administrative remedies with the Equal Employment Opportunity Commission and the Illinois Human Rights Commission. He again fails to point to a protected characteristic and fails to allege any facts from which the inference can be drawn that his termination was connected to any protected characteristic. Thus, the Plaintiff again fails to state a claim. This is the second time the Plaintiff failed to identify a protected

---

2/26/25 Order (D. 14 at ECF p. 16).

characteristic, even after the Court explicitly noted that shortcoming. The Court therefore dismisses the Plaintiff's harassment claim with prejudice as it is apparent he cannot cure that attempted claim's defects. *See Selyutin v. Bd. of Dirs. of Skokie Gardens Condo. Ass'n*, 818 F. App'x 535, 538 (7th Cir. 2020) (unpublished opinion) (citing *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018)) ("But when a plaintiff has already amended several times, the defendants have flagged the same deficiencies in multiple motions to dismiss, and the district court dismisses based on those defects, the plaintiff's failure to remedy those deficiencies can justify a ruling that further amendment would be futile.").

### IV

For the reasons set forth, *supra*, Defendant Caterpillar Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) and Memorandum in Support (D. 18) is GRANTED. The Plaintiff's claims for retaliatory discharge and promissory estoppel in the Second Amended Complaint are DISMISSED WITHOUT PREJUDICE. The Plaintiff's claim for harassment is DISMISSED WITH PREJUDICE. The Plaintiff is granted leave to amend his Second Amended Complaint within 21 days if he believes he can state a claim in accordance with this Order. In the event another motion to dismiss is filed and granted, the Plaintiff will not be allowed any further opportunities to amend his complaint thereafter.

*It is so ordered.*

Entered on June 17, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

13